Renato J. SUPINO and Muriel Supino, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 718–59, 414–60.

United States District Court
D. New Jersey.
March 29, 1961.

Davidson & Davidson, by Cuddie E. Davidson, Jr., Westfield, N. J., for plaintiffs, and John Ferguson, New York City (New York Bar), of counsel, for plaintiffs.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., and Lee Phillips, Dept. of Justice, Washington, D. C., for defendant.

WORTENDYKE, District Judge.

Plaintiffs, husband and wife, seek refund of alleged overpayments of United States income taxes. In Civil No. 718–59 plaintiffs set forth claims for taxes paid upon the earned income of Renato Supino (taxpayer) for the years 1950–1952. This action was supplemented by Civil No. 414–60 in the first count of which plaintiffs seek the refund of additional taxes assessed and paid upon in-

come for the years 1951 and 1952. In the second count thereof refund is sought for taxes paid for 1953 including those assessed against taxpayer's salary for that year, and also against the further sum of $4,312.50 received during that year as the net proceeds of settlement of an action brought by him in a court of the State of New York for a share of a finder's commission upon the sale of an American insurance company to a European insurance company.

Taxpayer predicates his claims of overpayment upon his failure to claim exemption from tax upon his earned income for the stated years (by reason of his ignorance of the law), because of his alleged bona fide residence in France, and his consequent receipt of the earned income from sources outside of the United States, all within the purview of Section 116(a) (1) of the Internal Revenue Code of 1939, as amended (Code), 26 U.S.C.A. § 116(a) (1). Alternatively, taxpayer pleads that if this Court should conclude that he was not entitled to the exemption provided by the cited statutory section, he should have been allowed, as deductions under Section 23(a) (1) of the Code, 26 U.S.C.A. § 23(a) (1), business and living expenses incurred by reason of the employment away from home, in the sum of $4,427.51 for the year 1951, and $4,039.59 for the year 1952.

The Government denies that taxpayer was a bona fide resident of France during the years in question, and, therefore, contends that taxpayer is disentitled to exemption under Section 116(a) (1). The Government also insists that the net proceeds of settlement of the lawsuit referred to may not, in any event, be excluded from gross income under the statute, because such payment was received for services performed *within* the United States. Defendant further asserts that the deductions claimed for expenses in 1951 and 1952 under Section 23(a) (1) (A) of the Code should be disallowed because without support in the evidence.

The two cases came duly to issue, and, pursuant to stipulation, were consolidated for trial to the Court, without a jury. In compliance with F.R.Civ.P. 52, 28 U.S. C.A., the Court makes the following

### Findings of Fact

1. Plaintiffs are husband and wife, presently residing together in the Borough of Demarest in this District, in a dwelling house purchased by the wife in 1942, with her own funds. Their children were enrolled in schools in the United States from which they graduated in due course. One of the children was in residence as a student at the Sorbonne in Paris during the 1950–51 academic year.

2. Prior to the outbreak of World War II, Mr. Supino had for some time been in the employ of Louis Dreyfus et Cie., (Dreyfus), in Paris, France, where he then resided with his wife and children. The business of that concern was world-wide, and the position then held by taxpayer was that of director of insurance for his employer, throughout the areas of its interests.

3. When the Germans invaded France, the further conduct of the employer's business from Paris was interdicted. Taxpayer and his family left Paris, and after a number of temporary changes of residence in various parts of Southern France, he was assigned to New York by his employer, where he performed similar duties at Dreyfus' New York affiliate, Leval & Co. Inc. (Leval), a New York corporation. Taxpayer and his family arrived in the United States on May 5, 1941. They remained in this country, until taxpayer was reassigned to Dreyfus' Paris headquarters in 1949. Mr. and Mrs. Supino were both naturalized as United States citizens in 1946.

4. Following the termination of the German occupation, Dreyfus reopened its headquarters in Paris, and arranged for the reassignment of taxpayer to that location. The terms and conditions of the employment in New York and later in Paris were oral. Taxpayer's requests for increases in salary were made to executives of Dreyfus. At the time of taxpayer's return to Paris in 1949, it was the understanding that his assignment to that city would be permanent in dura-

tion, with no stated or specific time period discussed or contemplated. Taxpayer arranged for the continuance of his salary payments through the New York affiliate, Leval, because he desired to protect his status as a citizen of the United States. The termination of taxpayer's employment by Dreyfus in 1954 came about because of a dispute between the taxpayer and a partner of Dreyfus.

5. Taxpayer took his entire family with him upon his return to Paris in 1949, and for a time they stayed in a hotel in that city. Attempts to enroll his children in suitable schools in Paris for the school year 1949–50 were unavailing, and, therefore, the three oldest children returned to the United States where they resumed their studies. Mrs. Supino and the youngest child followed them back to the United States in November of that year. Taxpayer remained in Paris and that fall purchased a dwelling house in a suburb of Paris which he renovated and furnished and in which he resided together with other members of his family when they were in France. That house is still owned by taxpayer. For the purposes of his employment, by reason of his United States' citizenship, taxpayer was required to secure, and did obtain, a permanent resident card, permitting him to work in France.

6. Following the reenrollment of the Supino children in private schools in the United States, Mrs. Supino customarily divided her time between France and the United States, usually maintaining the home in Demarest during school vacations and returning to Paris after the children resumed their studies at the various schools in which they were enrolled.

7. During the period between April 1949 and 1954 when his employment connection was terminated, taxpayer returned to the home in Demarest during his annual business vacations for varying periods of time. On one occasion, in 1950, he remained in the United States for a somewhat longer period of time than was customary, by reason of the pendency of the litigation herein previously referred to. During that year taxpayer was in the United States for four and a half months; in 1951 he was here for two and a half months; in 1952 three and a half months; and in 1953 spent four months in the United States. The remainder of those years was spent abroad, working out of the Paris office. During the periods of his stay in Demarest, taxpayer conducted a side-line business from his home there. He continued his church affiliations in the United States, made contributions to various charities in this country, purchased and maintained an automobile registered in New Jersey, and held a membership in a luncheon club in New York City throughout the period. He also placed advertisements, seeking employment which would permit him to reside in the United States. He purchased and kept another automobile in France, for his use when there.

8. In his 1953 income tax return, taxpayer reported the net proceeds of settlement of a law suit instituted by taxpayer in New York State, in the amount of $4,312.50, and claimed this amount as exempt income. This litigation was for the recovery of a share of a finder's commission in connection with the purchase by The General Insurance Company of Trieste of the Buffalo Insurance Company of Buffalo, New York. Taxpayer had met the controlling broker in New York City, and there brought together the representatives of the parties. The services for which he became entitled to a share in the commission were performed in the United States.

9. During the years in question taxpayer and his wife made joint income tax returns to the United States, which were prepared for them by a New York tax accountant. For the years 1949 through 1952 these returns reflected that taxpayers' residence was in the United States. Taxpayer asserts that his tax accountant did not disclose to him the provisions of Section 116(a) (1) of the Code, but that he was first informed thereof, in 1954, by

a representative of the Internal Revenue Service of the United States, stationed in Paris. As a result of this disclosure, in their joint return for the year 1953 plaintiffs for the first time reported that taxpayer was *not* a resident of the United States. The Internal Revenue Service determined that taxpayer was not a resident of *France* for the year 1953, and assessed a deficiency tax for that year amounting to $8,722.02. Deficiency taxes were also assessed for the years 1951 and 1952 upon a review of plaintiffs' returns for those years, in the respective amounts of $3,347.18 and $3,774.24, which deficiencies were all paid by the taxpayer. Claims for the refunds here sought were made and filed with the Commissioner more than six months prior to the commencement of these actions; no decision having been rendered by the Commissioner within that time. It is admitted that taxpayer paid no income taxes to France during the period of his employment there from 1949 to 1954, because of his payment of United States income taxes upon that earned income.

10. Since the termination of taxpayer's employment in 1954 he has continuously resided in the United States, and he has neither sought nor participated in further employment abroad.

11. Evidence was adduced on the hearing to the effect that at the time of taxpayer's reassignment to Paris in 1949, it was contemplated that he would live and continue to work in Europe indefinitely. The assignment was not for the performance of any task which could be promptly accomplished and completed. On the contrary, taxpayer contemplated a continuing responsibility which required him to maintain headquarters in Paris during the performance of his duties, despite the necessity that he travel elsewhere on occasion. In aid of the accomplishment of this purpose, taxpayer was annually paid an amount in excess of his salary to cover the added expense incident to his required foreign residence. I find that the taxpayer has carried the burden of proof that during the period of his employment in Paris he was a bona fide resident of France.

The following constitute the Court's

## Conclusions of Law

1. This Court has jurisdiction of the subject matter of both actions.

2. This Court has jurisdiction over the parties in both actions.

3. Renato J. Supino and Muriel Supino are both naturalized citizens of the United States.

4. Taxpayer has established to my satisfaction that he was a bona fide resident of the Republic of France throughout the period between January 1, 1950 and December 31, 1953. Therefore, the amounts which he received as salary or wages for services performed abroad during that period must be excluded from his gross income for those years, and those earnings are exempt from United States income taxation under Chapter 1 of the Internal Revenue Code of 1939.

5. The income reported in the 1953 joint return representing the net proceeds of settlement of taxpayer's suit for a share of a finder's commission upon the purchase of Buffalo Insurance Company by The General Insurance Company of Trieste, was derived by taxpayer from services performed in the United States, and was, therefore, properly included in taxpayer's gross income for the year in which it was received.

6. Plaintiffs are entitled to judgments, subject to the provisions of Section 322(a) (1) of the Code, 26 U.S. C.A. § 322(a) (1), for the amounts of the respective overpayments claimed in their complaint in C–718–59; and also for those overpayments based upon the allowances paid to taxpayer by his employer, as set forth in the first count of the complaint in C–414–60.

7. The exemption of taxpayer's earned income attributable to the years 1951 and 1952, during which period he was a bona fide resident of France, having been allowed, plaintiffs' *alternative*

claim for the allowance of expense deductions in the first count of Civil 414–60 is hereby denied.

8. Taxpayer is entitled to judgment in the second count of Civil 414–60 for only so much of the overpayment claimed as was based upon his salary from Louis Dreyfus et Cie. (Leval & Company) in 1953.

## Discussion

■ Taxpayer's present claims for refund are accompanied by his representation that his reporting of earned income from his employment for the years 1950 through 1952 inclusive resulted from a mistake of law, in that he was not aware of the provisions of Section 116(a) (1) of the Code. This section provides an exemption from taxation of earned income from sources without the United States where a United States citizen is a bona fide resident of a foreign country for an uninterrupted period including a taxable year, or years, and the monies constituting such income were not paid by the United States or any agency thereof. Overpayment of tax resulting from mistake of law or fact may be recovered. Schneider v. Duffy, D.C.N.J. 1930, 43 F.2d 642. Since taxpayer clearly qualifies for the exemption afforded by 116(a) (1) in all other respects, the sole question for the Court to determine is whether or not he was a bona fide resident of France for the years in question.

Prior to the change effected in the law by the Revenue Act of 1942, 56 Stat. 798, 841, an exemption was afforded citizens of the United States who were bona fide non-residents of the United States for more than six months during the taxable year. It became apparent by 1942 that this exemption was being abused, and as a result thereof the House of Representatives provided for its repeal in the revenue bill of that year. The Senate Committee on Finance, after holding hearings, however, concluded that to repeal the bill would work an injustice on certain United States citizens, and recommended that a revised bill be adopted.

The Congress accepted this recommendation and the section which concerns us here was adopted.

In Meals v. United States, D.C.Cal. 1953, 110 F.Supp. 658, a case involving a question similar to that before us, the Court reviewed the hearings of the Senate Committee on Finance in H.R. 7378, 77th Congress, 2d Session, for the purpose of gleaning from the record the situations envisioned by the Committee as meriting exemption from federal taxation. At pages 660–661, the Court says:

> "These illustrative cases considered at the Committee hearings fell into general pattern. They pictured a citizen who had established a home abroad in order to compete in foreign markets for goods or services. He had so far assimilated himself in the foreign life that he was confronted with expenses uncommon to residents of the United States. To maintain a standard of living comparable to that in the United States cost him more in countries where the prevailing standard was lower. Poor sanitation facilities increased his medical expenses. He found it necessary to send his children to private schools at his own expense. The desirability of maintaining social and business contacts in the United States occasioned high travel expense. In many instances he was required to pay an income tax to the country of his residence. And, even where no income tax was levied, his taxes were frequently heavy because a higher proportion of total taxation in many foreign countries is represented by various indirect taxes than in the United States."

Shedding further light on the construction of the term "bona fide resident" is Treasury Regulation 118, Sec. 39.116–1, which states that the test to be applied is that established by Treas.Reg. 118, Sections 39.211–2—.211–5 inclusive, wherein the principles applicable to the determination of residence or non-residence of an

alien in the United States are set forth. Treas.Reg. 118, § 39.211–2 provides:

"Definition.  (a) A 'nonresident alien individual' means an individual—

"(1) Whose residence is not within the United States; and

"(2) Who is not a citizen of the United States.  The term includes a nonresident alien fiduciary.

"(b) An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax.  Whether he is a transient is determined by his intentions with regard to the length and nature of his stay.  A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident.  One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances."

With the foregoing criteria in mind, it is our conclusion that the evidence adduced upon the trial clearly establishes that taxpayer was a bona fide resident of France for the years 1950, 1951, 1952 and 1953, and thus entitled to the exemption afforded.

Both Mr. Supino and Mr. Leval testified that it was their belief, when the former was transferred back to Paris in 1949, that such transfer was to be permanent.  The logic supporting this opinion is not refuted.  Taxpayer had worked in Paris for many years prior to World War II, and only came to the United States because of his inability to perform his duties in France as a result of the armed conflict.  He held the same position with Louis Dreyfus et Cie. (Leval & Co.) in 1949 as he had held prior to the War when Paris was his headquarters.  Testimony was adduced that Paris was the logical base of the operations of the employer's insurance department; which included maintenance of contact with the insurance companies of the world.

When he returned to France in the spring of 1949, Mr. Supino's entire family followed as soon thereafter as was possible, and they all lived in Paris until the fall of that year, when a house was purchased in LeVesinet, a suburb of Paris. During the summer months, English-speaking schools were applied to for the purpose of enrolling the children therein, but it was found that conditions of overcrowding were such that enrollment was an impossibility.  I find it logical to assume that if it was understood in 1949 that Mr. Supino's assignment to Paris was for a limited period, he would not have had his entire family join him in Paris, nor would he have sought enrollment of his children in schools in France.

The Government contends, however, that because Mrs. Supino spent almost half her time in the United States, the children attended schools in the United States, no income taxes were paid to France, the taxpayer conducted a sideline business from his home in Demarest, New Jersey, and made frequent trips to the United States, made donations to American charities, and plaintiffs' income tax returns for the years 1950, 1951, and 1952 stated that they were residents of the United States, the plaintiffs are not entitled to the exemption claimed.

In White v. Hofferbert, D.C.Md.1950, 88 F.Supp. 457, an exemption was allowed under section 116(a) (1) to an officer of an American corporation who went to Sweden and Spain to serve his company. For two of the taxable years for which the exemption was allowed, taxpayer spent almost six months of each of those years in the United States. He paid no taxes to either Sweden or to Spain, and when wartime restrictions were lifted, his wife joined him in Spain for only a brief period, returning to the United States for reasons of health, and remaining in this country when her mother became ill. There the Court stated, at page 461:

"The fact that taxpayer did not pay foreign taxes is relevant but not of itself conclusive or controlling."

And further, at page 463:

" * * * [I]f the taxpayer was a bona fide foreign resident in the foreign country, his temporary absence therefrom on business or vacation trips does not defeat the exemption."

In Yaross v. Kraemer, D.C.Conn.1949, 83 F.Supp. 411, the taxpayer, a United States citizen domiciled in Connecticut, went to Canada during World War II on a full time basis to ferry airplanes to combat areas. He made several trips to Connecticut during this period, each of short duration, retained his interest in a United States company, and bought and sold another business in this country. The Court held taxpayer to be a bona fide resident of Canada.

In Weible v. United States, 9 Cir., 1952, 244 F.2d 158, taxpayer and his wife sought refund of taxes, claiming they were paid on income exempt under the provisions of Section 116, of the Act of 1939. Taxpayer was hired by Max Factor to aid in the planning and construction of manufacturing plants in foreign countries, and the training of personnel to operate them. The taxpayer agreed to remain permanently outside of the United States except for short periods of training and consultation. The taxpayer became integrated in each foreign country to the extent of establishing social and business contacts locally. He had bank accounts in Los Angeles during this period where his employer deposited his checks, and he continued making payments toward the purchase of a lot in the United States. The Appellate Court, reversing the District Court's decision in favor of the Government, held that it could properly substitute its judgment for that of the trial court upon finding that the judgment of the latter was contrary to the weight of the evidence. Commissioner of Internal Revenue v. Fiske's Estate, 7 Cir., 1942, 128 F.2d 487, certiorari denied 317 U.S. 635, 63 S.Ct. 63, 87 L.Ed. 512; Bogardus v. Commissioner of Internal Revenue, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32. The reviewing Court found that Weible was a bona fide resident of foreign countries because he was (1) a citizen of the United States, (2) actually present in the foreign countries, (3) not a transient or sojourner; also (4) that he had at all times more than a floating intention to remain in the foreign countries, (5) for a period of time indefinite as to duration, (6) the purpose of his stay in the foreign countries could not be promptly accomplished, but was of such a nature as to require an indefinite extended foreign residence, even though (7) it was his intention to return to the United States when the purpose for which he entered the foreign countries had been accomplished or abandoned.

The Government in the present case relies heavily upon the case of Jones v. Kyle, 10 Cir., 1951, 190 F.2d 353. Kyle, the taxpayer, was a pipe-fitter by trade, who was married and lived in Oklahoma. In order to earn enough money to enable him to purchase a farm in Oklahoma he signed an 18 month contract in 1944 with a Brazilian corporation to work in Saudi Arabia. He had the option of remaining longer in Saudi Arabia if he desired, and upon initially leaving the United States he intended to stay abroad for three years. He made no effort to take his

**396**

wife with him, and while overseas he lived in a barracks with 700 to 800 other American workmen. He did nothing to identify himself with the customs or habits of that country, nor did he pay any taxes there. Most of his salary was paid to his wife in Oklahoma. The Court said, at page 355:

"Viewed in their totality these facts and circumstances make it clear that the taxpayer did not go to Saudi Arabia for permanent residence. He did not go there for an indefinite or undetermined period. * * * He went for a specific purpose and for a fixed period of time."

This case is readily distinguishable from the case at bar where our taxpayer purchased a home and completely entered into the social life, customs and habits of France, in addition to the other distinguishing facts already mentioned in this opinion.

In Downs v. Commissioner of Internal Revenue, 9 Cir., 1948, 166 F.2d 504, certiorari denied 1948, 334 U.S. 832, 833, 68 S.Ct. 1346, 92 L.Ed. 1759, the plaintiff signed a contract with Lockheed Aircraft Corp. in 1942 whereby he agreed to serve overseas in a position related to the prosecution of World War II. Taxpayer agreed to abide by the regulations of the United States Government, as well as those of his employer.

The Court, in denying the relief sought stated, at page 509:

"In practically all but geography petitioners, were on American soil, actually under the American flag, performing services for the benefit of the American Government, using materials furnished them by the American Government through the American contractor—Lockheed."

As in the Kyle case, supra, these facts are different from those in the case before us.

An order may be presented in conformity with the conclusions hereinabove set forth.